UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ASHLEY FORDE SANCHEZ,

                          Plaintiff,

    -against-

DREAM CHARTER SCHOOL,

                          Defendant.
-------------------------------------------------------------x

Civil Action No.
21-cv-

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff, Ashley Forde Sanchez, by her attorney, the Law Offices of Eric Dinnocenzo, for her

complaint against defendants Dream Charter School, alleges as follows:

## INTRODUCTION

1.     Plaintiff, Ashley Forde Sanchez, was employed as a teacher at the Dream Charter

School located in East Harlem.  On December 4, 2019, she sustained serious injuries to her right

shoulder and elbow when a student slammed a door into her.  She was absent from work due to

her injuries, and then tried to return to work on January 28, 2020, but Defendant failed to

accommodate her and, being unable to continue, she resumed medical leave.  On May 1, 2020,

after she had already applied for and was granted a leave of absence under the Family and

Medical Leave Act, Defendant refused to renew her annual contract based on her condition and

thus terminated her.

2.     Plaintiff's unlawful termination constitutes disability discrimination in violation

of State and City Human Rights Laws and was an interference with her rights under the Family

and Medical Leave Act ("FMLA") and also retaliation for her exercise of her rights under the

FMLA.  In addition, Plaintiff's termination occurred after she engaged in protected by making a

complaint about disparate treatment based on race, ethnicity and national origin, and so her termination was also motivated by unlawful retaliation.

## PARTIES

3.      Plaintiff, Ashley Forde Sanchez, is a citizen and resident of Puerto Rico.

4.      Defendant Dream Charter School ("Dream") is a 501(c)(3) non-profit entity that is organized and existing under and by virtue of the laws of the State of New York to operate as a charter school.

5.      Dream is a citizen of the state of New York and has a principal place of business in the County of New York, State of New York.

6.      At all relevant times, Dream had more than 50 employees.

## JURISDICTION AND VENUE

7.      The parties are of diverse citizenship pursuant to 28 U.S.C. § 1332(a) because they are citizens of different states.

8.      The amount in controversy in this matter exceeds the sum of $75,000.00, exclusive of interest and costs, because plaintiff asserts that her damages as set forth herein exceed that amount.

9.      Diversity jurisdiction exists under 28 U.S.C. § 1332 for the causes of action asserted herein.

9.      The Federal Court has original subject matter jurisdiction over plaintiff's claims alleging interference with her rights and retaliation under the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et. seq.).

10.     Defendant owns and operates a charter school in the County of New York, State of New York.

11.     Plaintiff's employment with Defendant occurred entirely within the County of New York, State of New York and the adverse action taken against her occurred there.

12.     Defendant regularly conducts a substantial amount of business in the Southern District of New York.

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because defendant resides there and because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**FACTUAL BACKGROUND**

14.     At all relevant times, Plaintiff was a 6th and 7th grade teacher (her title was Middle School Math Learning Specialist) at the Dream Charter School located at 1991 Second Avenue, New York, New York.  Plaintiff began teaching in the 2018-2019 school year.  Plaintiff was promoted for the next school year (2019-2020) to be Grade Team Leader for 6th Grade.

15.     On December 4, 2019 at approximately 12:30 p.m., Plaintiff was at the first-floor back stairway and in the process of bringing a 6th grade class to lunch.  She had her body turned against a metal double-door when a 7th grade student suddenly and forcefully opened the door and slammed it into her back and right shoulder and arm.

16.     Plaintiff immediately notified the school of the incident and that she was experiencing significant pain.  The Academic Dean observed that her arm was turning purple.  Notwithstanding, Plaintiff managed to teach her last class of the day from 1:15 p.m. to 2:45 p.m.

17.     Plaintiff went to Urgent Care that same day and was given anti-inflammatories.  She was told to rest and ice her right shoulder and arm, and she was advised not to return to work for at least three days.  Plaintiff notified both Human Resources and Principal Elizabeth Dodge that same evening that she would be unable to work for the next 3 days.  On December 7, 2020,

Plaintiff attended a follow-up appointment at Urgent Care and was recommended to see an orthopedic doctor.

18.     On December 10, 2019, Plaintiff visited with an orthopedist, Dr. Ashley Simela, who observed pain, tenderness, and marked restriction in her range of motion for her cervical spine and right upper extremity.  A cervical spine of MRI December 13, 2019 observed disc bulges at multiple levels of the cervical spine.  A right shoulder MRI of December 13, 2019 found tendinosis/tendinopathy and other abnormalities.  A right wrist MRI of December 14, 2019 also found tendinosis/tendinopathy and other abnormalities.  A right elbow MRI of December 14, 2019 revealed fluid and tendinosis with signal abnormalities and narrowness at the joint.

19.     Plaintiff treated with Dr. Simela on December 18, 2019 and was diagnosed with internal derangement of her right shoulder.

20.     A "Return to Work Statement" states she was unable to work through January 7, 2020.  Up to that point in time, in fact, Plaintiff's physicians had instructed her to stay out of work continuously since the accident date.

21.     On a January 7, 2020 visit, Dr. Simela observed that Plaintiff could not lift her right arm more than 90 degrees in a forward direction, and that internal and external rotation were respectively limited to 30 (normal is 70 to 90 degrees) and 15 degrees (normal is 90 degrees).  Abduction was limited to 10 degrees (normal is 150 degrees).  She was administered a right shoulder corticosteroid injection and prescribed a regimen of physical therapy.  Dr. Simela also extended her inability to work until January 21, 2020.

22.     On January 21, 2020, Plaintiff was administered a right elbow steroid injection. Also on that date, due to financial pressures and wanting very much to return to work, Plaintiff asked Dr. Simela to authorize her return to work in one week, and he reluctantly agreed to do so, but with restrictions that included "no heavy lifting, no prolonged sitting or standing, extra time to complete her tasks and no overhead movements." Plaintiff informed the school about her return and need for restrictions.

23.     However, upon returning to work on January 28, 2020—her first day back at work after the incident—the effects of her injury and the Defendant's failure to provide accommodations—which included failing to provide a chair and allowing time for rest and ice—caused Plaintiff to suffer pain and after three days, she was forced to go back on leave. *At that time, Principal Dodge stated that the school may not be "the right place" for Ms. Forde.* While Plaintiff had believed that she would be able to resume work with accommodations, the Defendant failed to provide her requested accommodations of a chair to sit in while teaching her classes and periodic breaks to rest her shoulder and arm and apply ice to them. Additionally, Defendant failed to engage in an interactive process with Plaintiff to seek to find a reasonable accommodation that could be implemented in the workplace and allow her to successfully return to work.

24.     On February 4, 2020 and February 18, 2020, Plaintiff underwent further corticosteroid injections to her right shoulder.

25.     In a February 22, 2020 email Plaintiff wrote to Defendant:

I hope this email finds you well. I have experienced great progress with my healing! To ensure I am still on the right track with my treatment, I have a follow up appointment with my physician in 6 weeks which will hopefully allow him to determine when I will be able to return to Dream.

26.     In a February 25, 2020 email, one of Defendant's employees, Lydia Tommy, wrote to Plaintiff that, "Given your inability to perform the essential functions of your job, it might benefit you to consider applying for FMLA."

27.     In a March 25, 2020 email, Plaintiff wrote in response, "I just realized I had received this message from you over a month ago!  I am so sorry for not noticing until now. Yes, FMLA seems like a good option given my current medical situation.  Please let me know if there's anything I need to do on my end."  Ms. Tommy sent two forms. No issue was raised with the gap in time for the response.

28.     In an April 8, 2020 email, Plaintiff informed Ms. Tommy that she still suffered from her injury and "I can barely go about completing basic life activities and needs without experiencing a set back and/or aggravating pain."  She also expressed anxiety about not having a position with Dream when she finished her recovery and further stated that she had questions about the FMLA process.

29.     Two days later, on April 10, 2020, Plaintiff submitted the FMLA forms to Defendant.  They included a form entitled "Employee Request Form for FMLA Leave" that specified April 10, 2020 as when the leave would commence.  A "Certification of Health Care Provider" form completed on April 8, 2020 by Dr. Simela indicated December 4, 2019 as when the medical condition commenced and listed April 1, 2020 to May 13, 2020 as the date of incapacity.

30.     Defendant never responded to the FMLA request, either verbally or in writing. Accordingly, Defendant did not retroactively designate leave pursuant to 29 CFR 825.301(d). Rather, it was designated as prospective leave under the FMLA.

31.     On or about May 1, 2020, Plaintiff spoke with Principal Dodge in a Zoom call. At that time, Plaintiff was hoping to return to work soon, but to her shock, Principal Dodge informed her that she could not have a contract for the following school year because she was not currently "physically working" at the school.  She also said if a position became available in the summer, and if Plaintiff was at that time medically capable of working, Defendant could reconsider keeping Plaintiff employed at the school.  Thus, Defendant terminated Plaintiff's employment beginning after the 2019-2020 school year ended.  Defendant did not give Plaintiff an opportunity to recover nor did it engage in an interactive process to determine when she would be anticipated to resume working.  Instead, it summarily fired her and never allowed her to continue working at the school.

32.     During the prior school year of 2018-2019, there was a discriminatory incident between Principal Dodge and two women of color, Plaintiff and Daisia Glover.  Principal Dodge labeled them as "defensive" which triggered the stereotype of the "angry Black woman."  In a May 15, 2019 email to Felicia Crump and Kate Malekoff, Ms. Glover requested a dialogue about this matter.  This incident played a role in Ms. Dodge's decision to terminate Plaintiff.

33.     Defendant employs teachers by offering them annual contracts each year, and if Defendant does not renew a teacher's contract, it means that the teacher is terminated.

34.     On a June 10, 2020 medical visit with Dr. Simela, Plaintiff's range of motion was noted to be significantly improved with mild deficits in forward elevation and flexion.  She currently is—and has been—capable of working at Dream and would have been able to do so at the beginning of the 2020-2021 school year.

35.     Plaintiff worked for defendant for over one year and more than 1250 hours before she requested and/or was eligible to take leave from work due to her injuries.

36.     Plaintiff is an individual who, at all relevant times, suffered from physical impairments.  These impairments substantially impaired her ability to perform daily activities and they qualify as disabilities under state and city anti-discrimination laws and they further entitled her to leave under the FMLA.

37.     At all times during her employment, Plaintiff fulfilled all of her duties satisfactorily and was qualified for her position.

38.     At all relevant times, Defendant was on notice of Plaintiff's disabilities and that she required and exercised her rights under the FMLA.

39.     The Defendant discriminated against Plaintiff because she is a person with disabilities.

40.     The Defendant terminated Plaintiff because she had disabilities and because she took FMLA leave.

41.     The individuals involved with the unlawful actions or failure to act, as complained of herein, were at all times employees of Defendant and were acting within the scope of their employment.

## First Cause of Action – Declaratory Relief

42.     Plaintiff incorporates the foregoing paragraphs as if they have been alleged herein.

43.     Defendant has wrongfully discriminated against Plaintiff under state and city anti-discrimination laws and have violated the FMLA.

44.     Plaintiff seeks a declaration of the rights and obligations of the parties by this Court in accordance with the applicable provisions of law relating to declaratory judgments.

45.     Plaintiff seeks and is entitled to a declaratory judgment establishing that the Defendant engaged in unlawful discrimination under the state and city anti-discrimination laws and

interfered with her rights under the FMLA and unlawfully retaliated against her based on her exercise of her FMLA rights.

## Second Cause of Action – Permanent Injunction

46.     Plaintiff incorporates the foregoing paragraphs as if they have been alleged herein.

47.     Plaintiff seeks and is entitled to injunctive relief directing and ordering that Defendant reinstate her in the employment position she would be in but for their unlawful treatment, and to make her whole in terms of accrued benefits such as seniority, bonuses, retirement benefits, vacation and sick time.

## Third Cause of Action: NYSHRL

48.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

49.     Defendant has discriminated against the Plaintiff based on disability in violation of the New York State Human Rights Law (Article 15 of the New York Executive Law), including both terminating her based on her disability and the failure to provide a reasonable accommodation; any provision of a reasonable accommodation would not have created an undue hardship for Defendant.

50.     Defendant retaliated against plaintiff after she exercised her rights to address her disabilities by going out on leave.

51.     Further, Defendant unlawfully retaliated against Plaintiff based on her protected activity of earlier making a complaint about disparate treatment based on her race, color, and national origin.

52.     Defendant's conduct was willful, intentional, made in disregard for the rights of Plaintiff, and Defendants knew or should have known it was in violation of the NYSHRL, entitling Plaintiff to an award of punitive damages.

9

## Fourth Cause of Action: NYCHRL

53.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

54.     Defendant has discriminated against the Plaintiff based on disability in violation of the New York City Human Rights Law (Title 8 of the Administrative Code of New York City), including both terminating her based on her disability and the failure to provide a reasonable accommodation; any provision of a reasonable accommodation would not have created an undue hardship for Defendant.

55.     Defendant retaliated against Plaintiff after she exercised her rights to address her disabilities by going out on leave.

56.     Further, Defendant unlawfully retaliated against Plaintiff based on her protected activity when she earlier made a complaint about disparate treatment based on her race, color, and national origin.

57.     Defendant's conduct was willful, intentional, made in disregard for the rights of plaintiff, and Defendant knew or should have known it was in violation of the NYCHRL, entitling Plaintiff to an award of punitive damages.

## Fifth Cause of Action - FMLA

58.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

59.     Defendant interfered with Plaintiff's rights under the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et. seq.) by not offering or allowing Plaintiff to have the leave to which she was entitled, by not timely or properly offering her FMLA leave or designating her leave properly upon notice of her FMLA-qualifying disability, by not restoring her to her position after her leave was completed, and by refusing her a new annual contract while she was

on leave. Defendant also failed to provide Plaintiff with proper notices regarding the designation of her leave and her rights under the FMLA.

60.     Defendant engaged in unlawful retaliation against Plaintiff after she asserted her rights under the FMLA by firing her and not offering her a new contract.

61.     Defendant's conduct was willful, intentional, made in disregard for the rights of plaintiff, and defendant knew or should have known it was in violation of the FMLA, entitling Plaintiff to an award of punitive damages.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests the Court to enter judgment in her favor and against Defendant, and to accord her the following relief:

(a)     A declaration that Defendant has engaged in unlawful discrimination and has violated the FMLA;

(b)     An injunction directing Defendant to place Plaintiff in the employment position she would be in but for its unlawful treatment, and to make her whole in terms of accrued benefits such as seniority, bonuses, retirement benefits, vacation and sick time;

(c)     Back pay with prejudgment interest and all the fringe benefits to which Plaintiff is entitled;

(d)     Compensatory damages for Plaintiff's non-economic injuries;

(e)     Alternatively, if reinstatement is not ordered, an award of front pay;

(f)     Punitive damages;

(g)     An award of reasonable attorney's fees;

(h)     Interest, costs and disbursements; and

(i)     Such other legal and equitable relief or may be just and proper under the
        circumstances.

Dated:     New York, New York
           January 25, 2021

                                    LAW OFFICES OF
                                    ERIC DINNOCENZO

                          By:     *s/Eric Dinnocenzo*_____
                                  Eric Dinnocenzo  (ED 3430)
                                  Attorney for Plaintiff
                                  469 Seventh Avenue
                                  Suite 1215
                                  New York, NY 10018
                                  (212) 933-1675
                                  eric@dinnocenzolaw.com